# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NEAL F. LURIA, in his capacity as liquidating trustee of the Sharity Ministries, Inc. Liquidating Trust, and ALIERA LT., LLC, | ) ) ) ) ) |
| *Plaintiffs*, | ) CIVIL ACTION NO.: ) 1:24-CV-03115-JPB ) |
| v. | ) JURY TRIAL DEMANDED ) |
| BURR & FORMAN LLP and JENNIFER M. MOSELEY, | ) ) ) |
| *Defendants*. | ) |

## DEFENDANTS BURR & FORMAN LLP'S AND JENNIFER M. MOSELEY'S REPLY IN SUPPORT OF MOTION TO DISMISS

## **INTRODUCTION**

In their Opposition, Plaintiffs rely heavily on the interests of Aliera's and Trinity's "innocent creditors" in seeking recovery from Burr for Aliera's and Trinity's alleged bad acts. But under binding Eleventh Circuit precedent, Plaintiffs as liquidating trustees only have the rights that Aliera and Trinity had immediately prior to their bankruptcies, so post-petition events such as Plaintiffs being granted the right to pursue recovery to benefit those creditors are immaterial. As such, the Sharity Trustee cannot ignore the fact that Trinity's CEO Rip Thead agreed to hire Burr only for two discrete tasks, which the FAC establishes were accomplished, and agreed that Burr would not represent Trinity in connection with the Management Agreement. The Aliera Trustee, similarly, cannot ignore Aliera's management's bad acts when attempting to hold Burr responsible.

The Sharity Trustee's malpractice and fiduciary duty claims (Counts I and II) are barred because of Trinity's limited engagement of Burr and the facial implausibility of its damages theory. The Sharity Trustee's aiding and abetting claim (Count III) fails because of the lack of fiduciary duty between Aliera and Trinity. Moreover, no matter how much Plaintiffs wish Georgia law were otherwise, those claims by both trustees (Counts III and IV) are barred by the stranger doctrine, as well as *in pari delicto* (as to Count IV). Plaintiffs' remaining claims (Counts V, VI, and VII) all depend on the existence of a viable tort, which does not exist here.

## ARGUMENT

### I. BURR FULFILLED ITS DUTIES AND DID NOT CAUSE TRINITY'S BANKRUPTCY (COUNT I).

#### A. Plaintiffs' Arguments Ignore the Scope of the Representation.

The Sharity Trustee's legal malpractice claims are based on services that Burr and Trinity expressly agreed Burr was *not* engaged to provide. Trinity hired Burr to form Trinity with the Georgia and Delaware Secretaries of State and file an IRS Form 1023, and confirmed that it "understand[s] that [Burr] will provide no other legal services to Trinity." FAC Ex. 3 at 1. Trinity also agreed that Burr would only represent Aliera in any further dealings. *Id*. at 1–2. There is no allegation that Burr failed to form Trinity under Georgia and Delaware law or failed to file the IRS Form 1023. To the contrary, Plaintiffs complain that Burr succeeded.

To support its claim, the Sharity Trustee argues that Burr "sabotaged [Trinity] by binding [it] to a patently unfair and one-sided Management Agreement." Opp. at 7–8. As the actual allegations in the FAC confirm, Burr did not "bind" Trinity to anything: Burr expressly disclaimed any duty to Trinity with respect to the Management Agreement, which Trinity's CEO confirmed when he signed the engagement agreement, and again when he signed the Management Agreement. FAC Ex. 3 at 1–2; FAC Ex. 4 § 9(f). The Sharity Trustee derides Trinity's CEO (i.e., the CEO of the entity into whose shoes it steps) as "unsophisticated, handpicked,

[and] inexperienced." Opp. at 12. The Sharity Trustee does not allege, however, that Thead was legally incapacitated or otherwise unable to sign a contract.

The Sharity Trustee also argues—without citation—that Burr committed malpractice by negligently registering Trinity as "Trinity Healthshare, Inc.," because "assuring the legality of a name is part of formation." *Id.* at 10. Filing an entity's certificate of incorporation is a separate legal matter from filing a trademark registration,[1] and the Sharity Trustee does not—and cannot—cite any authority for the proposition that an engagement to assist with corporate formation gives rise to separate claims for failure to register a trademark. Finally, the Sharity Trustee continues to improperly conflate seeking 501(c)(3) status with the distinct issue of exemption from insurance regulation as an HCSM, which Burr was not engaged to analyze.

The limited nature of Burr's engagement dooms the Sharity Trustee's claims. "The initial requirement for establishing liability is that there be a duty" that "arises from the attorney-client relationship itself." *Astral Brands, Inc. v. Boyd*, 2021 WL 2448358, at *5 (N.D. Ga. Apr. 28, 2021) (quoting *Hughes v. Malone*, 146 Ga. App. 341, 344 (1978)). "[T]he element of breach of duty in a legal malpractice case—the

---

[1] *Compare* O.C.G.A. § 10-1-440, *et seq. and* 15 U.S.C. § 1051 (setting forth the requirements for trademark registration) *with* O.C.G.A. § 14-2-101, *et seq.* and 8 Del. C. § 101, *et seq.* (setting forth requirements for incorporation).

- 3 -

failure to exercise ordinary care, skill, and diligence—must relate directly to the duty of the attorney, that is, the duty to perform the task for which he was employed." *Tante v. Herring*, 264 Ga. 694, 695 (1994) (emphasis omitted). Construing Burr's duty as broadly as Plaintiffs desire would render the plain text of the engagement agreement a nullity and expand lawyers' exposure to claims for *anything* their clients did. That is not the law in Georgia. *See Hays v. Page Perry, LLC*, 92 F. Supp. 3d 1315, 1320 (N.D. Ga. 2015); *Tante*, 264 Ga. at 695. Attorneys cannot be liable for malpractice where they carry out their exact duties pursuant to the representation. *Id.;* FAC ¶¶ 33–35, 47.

Citing a Ninth Circuit case applying Idaho law, the Sharity Trustee argues that Burr "owed continuing duties to Trinity, even after completing their representation, to refrain from sabotaging that work." Opp. at 10. But Georgia rejects the "continuous representation rule" that purports to extend an attorney's legal duties to a client outside of the representation for purposes of future malpractice actions. *See Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 848–49 (1998).

Finally, the Sharity Trustee misapprehends the relevance of the conflict waiver in the engagement letter to its claims. Opp. at 11–12. Had Burr undertaken to represent both Trinity and Aliera in negotiation of the Management Agreement, a potential conflict could have existed and the waiver's enforceability would have been implicated. That is not what happened: instead, Burr made clear to Trinity, and

Trinity agreed, that Burr would represent Trinity for two discrete tasks and "no other legal services." FAC Ex. 3 at 1. As the FAC makes clear, Burr did not represent Trinity in the Management Agreement. As such, the Sharity Trustee's arguments about the unenforceability of the conflict waiver are inapposite.[2]

### B. Burr Did Not Proximately Cause Plaintiffs' Injuries.

As an initial matter, proximate cause "may be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion, that the defendant's acts were not the proximate cause of the injury." *Karekezi v. Pinnacle Sys., Inc.*, 367 Ga. App. 391, 396 (2023) (quoting *Union Carbide Corp. v. Holton*, 136 Ga. App. 726, 729 (1975)). And while Plaintiffs point to paragraph 32 of the FAC to argue "the losses caused by Defendants' malpractice . . . were actually foreseen by Defendants themselves[,]" their cited paragraph only alleges that Burr knew that Trinity's offering "could be considered insurance"—not that Burr foresaw Trinity's eventual bankruptcy. Opp. at 14.

---

[2] Plaintiffs' cases are similarly inapposite. In *Porubiansky v. Emory University*, a dentist was sued for breaking a patient's jaw during removal of an impacted tooth, and the court refused to enforce an exculpatory clause on public policy grounds. 156 Ga. App. 602, 606 (1980). In *CenTra, Inc. v. Estrin* (applying Michigan law), an attorney represented adverse parties on the same matter—bridge construction, which one party supported and the other opposed—creating a fact question regarding informed consent. 538 F.3d 402, 409, 417 (6th Cir. 2008). Both cases involved the impact of waivers on duties the defendant admittedly agreed to undertake; here, by contrast, Burr and Trinity agreed that Burr would ***not*** undertake the duties the Sharity Trustee now seeks to enforce.

Burr's actions simply made Trinity come into existence as a non-profit entity registered with Georgia and organized in Delaware; Trinity's fate was not permanently sealed as of the moment of its creation. Instead, Trinity's own later decisions on how to conduct its business and respond to later lawsuits and investigations resulted in Trinity's bankruptcy. To cite just two examples: Trinity's decision in May 2019, in consultation with lawyers at another law firm, on how to respond to the State of Washington's cease and desist order (*see, e.g.*, FAC ¶¶ 58–61; ECF 17-1 at 14 and Ex. A) and its decision (also in consultation with other lawyers) to enter into a new set of management agreements that governed its operations up through the time of its bankruptcy (ECF 17-1 at 14 and Ex. D) are among the many intervening acts that were not "actually foreseen by" Burr when it helped organize Trinity. As Plaintiffs' cited cases recognize, an intervening act can become the sole proximate cause of a plaintiff's injuries where the intervening act was not "triggered by defendant's act." *See Ont. Sewing Mach. Co. v. Smith*, 275 Ga. 683, 686 (2002). It is not plausible that simply organizing a nonprofit entity would cause that nonprofit to declare bankruptcy three years later.[3]

---

[3] Separately, Plaintiffs' allegation that Thead was a "personal friend of the Moses family" and was handpicked to do Moses' will (FAC ¶¶ 31–34) raises questions about whether (assuming the facts in the FAC to be true) Trinity would have done anything different had Burr given any "advice" described in FAC ¶ 31, further demonstrating the lack of proximate cause. *Cf. Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848, at *5–6 (N.D. Tex. July 31, 2020) (dismissing malpractice claim).

## II. THE SHARITY TRUSTEE'S FIDUCIARY DUTY CLAIM FAILS (COUNT II).

Plaintiffs argue they are permitted to plead malpractice and fiduciary duty breach in the alternative. While that is true as far as it goes, the same reasons that bar the Sharity Trustee's malpractice claims apply with equal force to its fiduciary claims: alternative pleading cannot save a claim that fails on the merits. Trinity and Burr expressly agreed that Burr would not represent Trinity with respect to the Management Agreement from which much of the Sharity Trustee's claim stems. *See Allen v. Hub Cap Heaven, Inc.*, 225 Ga. App. 533, 537 (1997) (dismissing fiduciary duty claim where "there [was] no basis in this case for an inference that a fiduciary or confidential relationship existed between them *with respect to the transaction at issue*" (emphasis in original) (quoting *Kienel v. Lanier*, 190 Ga. App. 201, 204 (1989))). And the lack of a viable proximate cause argument for malpractice damages similarly applies to the fiduciary duty claims. *See Graivier v. Dregar & McClelland*, 280 Ga. App. 74, 81 (2006) (proximate cause is required for both malpractice and fiduciary duty claims).

## III. THE SHARITY TRUSTEE'S CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES (COUNT III) FAILS.

### A. No Fiduciary Duty Existed as a Matter of Law.

The Sharity Trustee argues that Aliera controlled Trinity's finances in a way that created a fiduciary relationship between those parties, miscasting Burr's

arguments as stating that "labels, not realities, control." Opp. at 16. These arguments fail to properly credit the Management Agreement, which outlined "a business transaction in which the responsibilities of the parties were defined explicitly in the Agreement." *Megel v. Donaldson*, 288 Ga. App. 510, 516 (2007). While "the existence of a fiduciary duty 'is determined by the substantive agreement of the parties, not by labels placed on the relationship,'" the contours of the Management Agreement *are* the terms of the substantive agreement between those parties. *PNC Fin. Servs. Grp. v. Gibson*, 371 Ga. App. 660, 669 (2024) (quoting *SFM Holdings v. Banc of Am. Secs.*, 600 F.3d 1334, 1339 (11th Cir. 2010)) (cleaned up). Plaintiffs themselves cite to the Management Agreement as outlining the relationship between Aliera and Trinity. *See* Opp. at 16 (citing FAC Ex. 4).

Thead and Trinity expressly agreed that Aliera owed it no fiduciary duties in the very agreement setting forth the substance of those parties' relationship. FAC Ex. 4 at § 9(a) ("[t]he relationship of the Parties is that of independent contractors"; "This Agreement does not . . . allow either Party to create or assume any obligation on behalf of the other Party.") Plaintiffs cannot plead the existence of a fiduciary relationship where both parties agreed no such relationship existed. *Gibson*, 371 Ga. App. at 669; *accord Overlook Gardens Props., LLC v. Orix, USA, LP*, 366 Ga.

App. 820, 826 (2023) (no fiduciary relationship where documents disclaimed it and party "acknowledged that he understood there was no fiduciary relationship").[4]

## B. Georgia's Stranger Doctrine Bars the Claim.

Plaintiffs' aiding and abetting claim is also barred because Burr was not a stranger to the alleged fiduciary relationship, even if it existed. Plaintiffs argue that "[b]ecause the Georgia Supreme Court has not addressed [whether the stranger doctrine bars claims for aiding and abetting the breach of fiduciary duty], this Court . . . must make an 'Erie guess' about how that court would rule." Opp. at 17 (quoting *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018)). Plaintiffs omit that under *Turner*, where the Georgia Supreme Court has not spoken on a topic, federal courts "must follow the decisions of [the state's] intermediate courts[,] . . . [although] we may disregard these decisions if persuasive evidence demonstrates that the highest court would conclude otherwise." *Id.* at 1262 (citing *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2019)); *accord IHI E&C Int'l Corp. v. Robinson Mech. Contrs., Inc.*, 2022 WL 4776111, at *2 (N.D. Ga. Sept. 30, 2022).

---

[4] Plaintiffs also argue that in any event, the existence of a fiduciary relationship is a fact question. Opp. at 16–17. But claims for breach of fiduciary duty are subject to dismissal where the plain terms of the parties' agreement provide that no fiduciary duty existed. *See, e.g.*, *Curry v. TD Ameritrade, Inc.*, 2015 WL 11251449, at *12 (N.D. Ga. June 30, 2015) (dismissing claim for breach of fiduciary duty where agreements were unambiguous that party had no fiduciary duty with plaintiffs).

The Georgia Court of Appeals has held for almost two decades that the stranger doctrine applies to claims for aiding and abetting the breach of fiduciary duties. *See Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 25–26 (2006); *see also Kahn v. Britt*, 330 Ga. App. 377, 389 (2014). The Court must follow this rule statement. *IHI E&C Int'l*, 2022 WL 4776111, at *2. There is no reasonable doubt that the Supreme Court of Georgia would agree. In fact, the Supreme Court recently denied certiorari on a Court of Appeals opinion dismissing a claim for aiding and abetting breach of fiduciary duty based on application of the stranger doctrine. *United Scis., LLC v. Kellett*, 368 Ga. App. 690 (2023), *reconsideration denied* Jul. 12, 2023, *certiorari denied* Feb. 6, 2024; *see also Hyre v. Denise*, 214 Ga. App. 552 (1994) (attorney who asserts claim arising from contractual rights is no stranger to relationship), *reconsideration denied* Sept. 2, 1994, *certiorari denied* Jan. 19, 1995. This accords with the Supreme Court of Georgia's expansive application of the stranger doctrine. *See, e.g.*, *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 608–09 (1998).

Accordingly, the fact that "no other jurisdiction [Plaintiffs] found extends the stranger doctrine to fiduciary relationships," Opp. at 18, is immaterial. Similarly, Plaintiffs' musing about "the rationale behind the stranger doctrine" cannot change that the Georgia Court of Appeals has *already* logically extended the stranger doctrine to fiduciary duty claims, including *FreightCheck*, which cites to O.C.G.A.

§ 51-12-30. *See* 280 Ga. App. at 24–25. Finally, neither the existence of Georgia cases where the parties did not raise the stranger doctrine[5] nor the fact that Plaintiffs allege that the fiduciary relationship was "a vehicle for fraud and not legitimate" can alter clear Georgia law on this subject.

IV. **THE ALIERA TRUSTEE'S CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (COUNT IV) FAILS.**

 A. **Georgia's Stranger Doctrine Bars the Claim.**

The FAC alleges that Burr was heavily involved with the agreements underlying Aliera's operations. *See, e.g.*, FAC ¶¶ 19–23. These allegations demonstrate Burr was not a stranger to the transactions between Aliera and the Aliera Insiders, so the Aliera Trustee's claim in Count IV is barred. *See supra* Section III; *accord Am. Mgmt. Servs. E., LLC v. Fort Benning Fam. Cmtys, LLC*, 333 Ga. App. 664, 687–88 (2015) (applying stranger doctrine to breach of fiduciary duties claim).

 B. **Binding *In Pari Delicto* Precedent Bars Count IV.**

Alternatively, Count IV fails because it is barred by *in pari delicto*. *See* ECF 17-1 at 22–25. The Eleventh Circuit's binding precedent in *Official Committee of*

---

[5] Neither *TMX Finance, LLC v. Goldsmith*, 352 Ga. App. 190 (2019) nor *In re Aliera Companies, Inc.*, 2024 WL 4375950 (Bankr. N.D. Ga. 2024) ("*Health Reform*"), addressed the potential application of the stranger doctrine. Plaintiffs also cite *Health Reform* for the proposition that application of the stranger doctrine here would be "clearly an 'absurd' result." Opp. at 19. But as discussed *infra* at Section IV(B), the court in *Health Reform* improperly imported concerns about "innocent creditors" into the analysis of a trustee's right to pursue claims in this setting.

*Unsecured Creditors of PSA v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) governs the Aliera Trustee's claim. In that case, the court held the plaintiff-trustee's federal and Georgia state law claims were subject to *in pari delicto*. *Id.* at 1152. Because 11 U.S.C. § 541(a)(1) limits the debtor's estate to legal and equitable interests (including causes of action) "as of the commencement of the case" and a trustee "succeeds into the rights of the debtor-in-bankruptcy," the court reasoned that the trustee essentially "stands in the shoes of the debtor" and is subject to the same defenses that were available against the debtor at the outset of the bankruptcy. *Id.* at 1149–50 (citing *O'Halloran v. First Union Nat'l Bank*, 350 F.3d 1197, 1202 (11th Cir. 2003)). Put differently, a trustee does not "acquire[] rights and interests *greater* than those of the debtor." *Id.* at 1150 (emphasis in original). Indeed, allowing post-petition events such as the appointment of a trustee to expand the rights of the debtor's estate would undermine fundamental tenets of bankruptcy law. *See id.* (discussing the automatic stay freezing rights of parties to the bankruptcy). Thus, the Eleventh Circuit concluded that "*in pari delicto* applies with equal force to a trustee-in-bankruptcy as a debtor outside of bankruptcy." *Id.* at 1151.[6]

---

[6] Circuit courts across the country uniformly agree. *See Kelley v. BMO Harris Bank Nat'l Ass'n*, 115 F.4th 901, 905–07 (8th Cir. 2024); *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 355–58 (3d Cir. 2001); *In re Bernard L. Madoff Inv. Secs. LLC*, 721 F.3d 54, 63 (2d Cir. 2013); *Nisselson v. Lernout*, 469 F.3d 143, 153 (1st Cir. 2006); *In re Hedged-Invs. Assocs., Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996); *see also Bank of Marin v. England*, 385 U.S. 99, 101 (1966).

Plaintiffs argue that Burr's reliance on *Edwards* is "misplaced" because "it does not apply Georgia law[.]" Opp. at 22 n.8. Plaintiffs are wrong. In *Edwards*, the Eleventh Circuit initially set out the above principles to frame its assessment of the claims—including a Georgia state law claim—and directly respond to the plaintiff-trustee's argument "that his complaint [was] not subject to a defense of *in pari delicto*[.]" 437 F.3d at 1149. While the Georgia law claim failed on independent grounds, *Edwards* made clear that such claim was subject to *in pari delicto* by virtue of the law governing the rights of bankruptcy trustees. Additionally, the court rejected the argument that *in pari delicto* did not apply because the trustee's "recovery would ultimately inure to the benefit of innocent creditors." *Id.* at 1151. And the court cited authority from its sister circuits that similarly considered state law and arrived at the same conclusion. *Id.* Thus, *Edwards* correctly concluded that the trustee only acquires the rights of the debtor as they existed at the commencement of the bankruptcy and is binding here.

Against the weight of this authority, Plaintiffs contend that the "innocent creditor" exception bars the application of *in pari delicto*, relying primarily on *Health Reform*. Opp. at 22–24. However, that court erroneously failed to apply *Edwards* in assessing the *in pari delicto* defense, *see Health Reform* at \*16, instead

- 13 -

relying on inapposite caselaw that does not meaningfully engage with *Edwards*.[7] *See id.* at *17–18 (citing *Hays v. Paul, Hastings, Janofsky & Walker LLP*, 2006 WL 4448809 (N.D. Ga. Sept. 14, 2006) (concerning a court-appointed receiver);[8] *Am. Pegasus SPC v. Clear Skies Holding Co.*, 2015 WL 10891937 (concerning Joint Official Liquidators attempting to recover fraudulent conveyances);[9] *In re Friedman's Inc.*, 394 B.R. 623, 629 (S.D. Ga. 2008) (focusing on the adverse interest and sole actor exceptions in denying interlocutory appeal certification)). Specifically, the court in *Health Reform* failed to consider whether Aliera—into whose shoes the trustee stepped—could have asserted its claims prior to the bankruptcy without being subject to an *in pari delicto* defense. Since the existence of "innocent creditors" would not have been implicated by Aliera's assertion of such claims, the existence of such creditors (which is made relevant only because of post-petition events) cannot serve to expand the rights of the debtor's estate by providing the Aliera Trustee a defense Aliera itself would not have had.[10]

---

[7] Plaintiffs rely on this same authority in their Response. Opp. at 23 n.9.
[8] Receivers are governed by different law than trustees. *See Edwards*, 437 F.3d at 1151; *Lafferty*, 267 F.3d at 358.
[9] "Fraudulent conveyances also are an exception to the general rule that the trustee takes the debtor estate as it is at the commencement of the bankruptcy." *Edwards*, 437 F.3d at 1151–52.
[10] Plaintiffs' other cited authority is also distinguishable and fails to support application of an innocent creditor exception here. *See* Opp. at 22 (citing *Brooke v. Kennedy*, 158 S.E. 4 (Ga. 1931) (involving receiver, not bankruptcy trustee); *Roney*

The Court should reject Plaintiffs' invitation to "chart a new course" and instead find that *in pari delicto* bars Count IV as a matter of law.[11] *See Edwards*, 437 F.3d at 1151.

## V.  PLAINTIFFS' REMAINING CLAIMS FAIL.

Plaintiffs do not contest that the Sharity Trustee's civil conspiracy claim (Count V) and claim for attorney's fees (Count VII) fail without the existence of an underlying tort. *See* Opp. at 24. Plaintiffs assert (citing a Texas bankruptcy case) that their contribution claim (Count VI) survives because Burr, Trinity, and Aliera were joint tortfeasors. But "the right to contribution relates only to joint tortfeasors, and where the proposed defendant cannot be made liable as a joint tortfeasor, the contribution action does not state a claim." *Hines v. Holland*, 334 Ga. App. 292, 295 (2015) (quotation omitted). Burr is not a joint tortfeasor because Plaintiffs' tort claims are due to be dismissed; as a result, an action cannot lie for contribution.

## CONCLUSION

For these reasons, the Court should grant Burr's Motion to Dismiss.

Respectfully submitted, this 25th day of November, 2024.

---

*v. Crawford*, 68 S.E. 701 (Ga. 1910) (noting defendant should not have received "benefit" of *in pari delicto* instruction but affirming denial of motion for new trial)).

[11] In their motion, Defendants argued that the adverse interest exception does not apply or is overridden by the sole actor exception. *See* ECF 17-1 at 24–25. Plaintiffs do not address this argument in their Response and thus concede its persuasiveness. *See Brown v. J.P. Turner & Co.*, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011).

/s/ *Lawrence A. Slovensky*
Lawrence A. Slovensky
Georgia Bar No. 653005
Jonathan M. Kaufman
Georgia Bar No. 834982
**KING & SPALDING LLP**
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
lslovensky@kslaw.com
jkaufman@kslaw.com

*Counsel for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), NDGa., counsel hereby certifies that the above brief has been prepared in compliance with LR 5.1(B) and (C), NDGa., using Times New Roman 14-point style font.

This 25th day of November, 2024.

*/s/ Lawrence A. Slovensky*
Lawrence A. Slovensky

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NEAL F. LURIA, in his capacity as liquidating trustee of the Sharity Ministries, Inc. Liquidating Trust, and ALIERA LT., LLC, )<br>)<br>)<br>)<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>BURR & FORMAN LLP and JENNIFER M. MOSELEY, )<br>)<br>)<br>*Defendants*. ) | CIVIL ACTION NO.:<br>1:24-CV-03115-JPB<br><br>JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day a copy of the foregoing was filed with the Court's CM/ECF system, which will serve all counsel of record.

This 25th day of November, 2024.

*/s/ Lawrence A. Slovensky*
Lawrence A. Slovensky

- 18 -