UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NEIL F. LURIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BURR & FORMAN, LLP, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 1:24-CV-03115-JPB |

## ORDER

This matter is before the Court on Burr & Forman LLP ("Law Firm") and Jennifer M. Moseley's ("Moseley") (together, "Defendants") Motion to Dismiss [Doc. 17]. This Court finds as follows:

## BACKGROUND

Neil F. Luria, in his capacity as liquidating trustee of The Sharity Ministries Inc. Liquidating Trust ("Sharity Trustee"), and Aliera LT, LLC, as liquidating trustee for The Aliera Companies, Inc. Liquidating Trust ("Aliera Trustee") (together, "Plaintiffs"), filed this legal malpractice action on July 15, 2024, against Defendants. [Doc. 1]. Plaintiffs filed a First Amended Complaint for Damages on August 2, 2024. [Doc. 14]. Plaintiffs allege the following facts in their First Amended Complaint:

The Affordable Care Act contains an individual mandate requiring most Americans to purchase "minimum essential [health insurance] coverage—or else pay a tax penalty." Id. at 4.  Members of a health care sharing ministry ("HCSM"),[1] however, are exempt from this requirement.  According to Plaintiffs, this exception to the individual mandate "provided an opportunity for unscrupulous business people to profit from unsuspecting individuals who needed coverage for health care needs." Id. at 5.

In 2015, Timothy Moses—a convicted felon who had already served over six years in prison for securities fraud and perjury—and Shelley Steele, his wife, (collectively, "Insiders"), launched Aliera Healthcare, Inc. ("Aliera") and began selling limited health care plans to businesses and individuals. Id. at 5–6.  Not long after forming Aliera and after realizing the profit potential in selling HCSMs, Moses approached Anabaptist Healthshare, Inc. ("Anabaptist")—a small HCSM operated for members of a Mennonite community—about vastly growing its

---

[1] An HCSM allows individuals who share a common set of ethical or religious beliefs to join together to share medical expenses. [Doc. 14, p. 4].  Importantly, for an HCSM to qualify as an exception to the individual mandate, it must have been "in existence at all times since December 31, 1999," and medical expenses of its members "must have been shared continuously and without interruption since at least December 31, 1999." Id. at 4–5.

operation through a relationship with Aliera.[2]  Id. at 6.  Anabaptist agreed to go into business with Aliera, and together, Aliera and Anabaptist formed Unity Healthshare, Inc. ("Unity") as the vehicle to sell the HCSM plans.  Id.  Under the parties' agreement, Aliera collected the premium payments (approximately $2.5 million per month) and controlled the bank accounts containing those premium payments.  Id.  Aliera, however, failed to set aside enough funds to pay medical claims on behalf of Unity's members.  Id.  The Insiders also engaged Moseley[3] as their legal counsel and set up various entities into which they could divert large sums of Unity's cash to be used for personal purposes.  Id. at 6–9.  Ultimately, the relationship between the Insiders, Aliera and Unity crumbled, and the parties sued each other in 2018.  Id.  Because of this dispute, Aliera could no longer sell Unity's HCSM plans.  Id. at 11.

Despite Moseley's knowledge of the Insiders' misuse of Unity's funds, in June 2018, Defendants assisted the Insiders in creating a new entity called Trinity

---

[2] For Moses to sell HCSM plans, Moses had to go into business with an entity that had been selling HCSM plans since at least 1999.

[3] At the time, Moseley was a principal at Morris Manning Martin.  Moseley later joined the Law Firm as a partner.  [Doc. 14, p. 7].

3

Healthshare, Inc. ("Trinity").[4]  Id. at 12.  At Moses's direction, on June 27, 2018, the Law Firm prepared and filed a Certificate of Incorporation with the Secretary of State of Delaware representing that Trinity was being organized "exclusively for charitable and religious purposes under section 501(c)(3) of the Internal Revenue Code."  Id.  Thereafter, on July 3, 2018, Moseley filed an "Application for Recognition of Exemption under Section 501(c)(3)" with the Internal Revenue Service.  Id. at 13.  Plaintiffs contend that Defendants knowingly or negligently made multiple representations on the forms required to incorporate Trinity and obtain tax-exempt status.  Id. at 13–14.

On July 26, 2025, a month after Defendants created Trinity and while the application for the tax exemption was still pending, Moseley emailed William Thread[5] and asked him to sign an engagement letter retroactive to June 26, 2018.  Id. at 15–16.  Although neither Moseley nor the Law Firm had ever communicated with Thread regarding Trinity, Moseley stated in the engagement letter that "this letter confirms your engagement of Burr & Forman LLP for services as your legal

---

[4] The name was later changed to Sharity Ministries, Inc. because Trinity Health was already a registered tradename and mark of another entity.

[5] Thread—an Aliera employee and a friend of the Moses family—was identified by Moses as the responsible party to sign the documents on behalf of Trinity.  [Doc. 14, p. 13].  Plaintiffs assert that even though Trinity was created at Moses's request, "he wanted to ensure his fingerprints were not visible."  Id. at 12.

counsel regarding the formation of Trinity Healthshare, Inc. and the preparation of the Form 1023 and the adjudication of the same with the IRS." Id. at 87.  The engagement letter further provided that "you have retained us only for the limited purpose of the Form 1023, and you and we understand that we will provide no other legal services to Trinity Healthshare." Id.  Notably, the engagement letter contained a conflict waiver "because Aliera was an ongoing client of [the Law Firm]." Id. at 16.

Trinity began selling its HCSM plans to the public in August 2018. Id. at 22.  Within weeks, multiple states and the District of Columbia brought regulatory actions alleging that Trinity was not a legitimate HCSM.[6] Id.  In addition to these regulatory actions, class action lawsuits that alleged that Trinity was unfairly and deceptively selling illegal insurance and was not a qualified HCSM were filed. Id. at 23.  Plaintiffs assert that Trinity incurred millions of dollars in legal fees in defending the regulatory actions and lawsuits and was also required to pay fines. Id.  By 2021, Trinity filed bankruptcy. Id.

As a result of these events, the Sharity Trustee asserted the following claims: legal malpractice/negligence (Count I); breach of fiduciary duty (Count II); aiding

---

[6] The states included Washington, California, Colorado, Connecticut, Iowa, Michigan, New York, New Hampshire, New Jersey, New Mexico, Oregon, Pennsylvania and Washington.  [Doc. 14, p. 22].

5

and abetting breach of fiduciary duties (Count III); and civil conspiracy (Count V). The Aliera Trustee also brought a claim for aiding and abetting breach of fiduciary duties (Count IV). Together, Plaintiffs brought claims for contribution (Count VI) and attorney fees (Count VII). Defendants filed the instant Motion to Dismiss on September 9, 2024. The motion is now ripe for review.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). At bottom, the complaint must contain more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678).  While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011), a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, Iqbal, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps:  (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## DISCUSSION

In their motion, Defendants argue that the Court should dismiss the entirety of Plaintiffs' First Amended Complaint for Damages.  Defendants argue that Counts I through IV should be dismissed on the merits.  According to Defendants, Counts V through VII, which are derivative claims, cannot survive if the first four counts fail.  The Court will first address whether Count I is subject to dismissal.

**I.  The Sharity Trustee's Claim for Legal Malpractice (Count I)**

In Count I, the Sharity Trustee alleges that Defendants negligently performed their duties in incorporating Trinity and applying for its tax-exemption status.  To establish a legal malpractice claim, "the client has the burden of establishing three elements:  (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff."  Fortson v. Hotard, 684 S.E.2d 18, 20 (Ga. Ct. App. 2009) (citation modified).

In their Motion to Dismiss, Defendants contend that the Sharity Trustee's claim for negligence/legal malpractice fails for two reasons.  First, they argue that they accomplished the limited tasks that they were engaged to perform and cannot be liable for services that they did not agree to provide.  Second, Defendants argue that the claim fails to sufficiently allege proximate causation.  The Court disagrees on both fronts.

    **a.  Limited Tasks**

Defendants argue that this Court must dismiss the legal malpractice claim because they completed the two tasks contained in the engagement letter (*i.e.,* the formation of Trinity and obtaining tax-exempt status for Trinity).  This Court acknowledges that Defendants incorporated Trinity with the Delaware Secretary of

8

State and obtained tax-exempt status for Trinity. Completion of the task, however, does not necessarily absolve a defendant of liability where it is alleged that a defendant performed the task without ordinary care, skill and diligence. In the Court's view, it is not completing the task that matters, it is completing the task with the skill and care of a professional under the circumstances. Indeed, once an attorney has a duty to perform a task, she shall perform that task with "such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." Hughes v. Malone, 247 S.E.2d 107, 110–11 (Ga. Ct. App. 1978). As explained by the Georgia Court of Appeals,

> although an attorney is not an insurer of the results sought to be obtained by such representation, when, after undertaking to accomplish a specific result, [she] then willfully or negligently fails to apply commonly known and accepted legal principles and procedures through ignorance of basic, well-established and unambiguous principles of law or through a failure to act reasonably to protect [her] client's interests, then [she] has breached [her] duty toward the client.

Id. at 11.

The Sharity Trustee alleged that in representing Trinity for purposes of its formation, Defendants breached the duty of care in a number of ways. Specifically, the Sharity Trustee asserted that Defendants breached their duty by failing to advise Trinity about any of the following facts:

9

- Aliera's prior commingling of Unity's and Aliera's funds (using a single bank account for both Unity and non-Unity member payments);

- Timothy Moses's conversion of Unity's funds;

- Timothy Moses's felony convictions for fraud and perjury;

- The imprudence—or at a minimum, the risks for Trinity—of going into business with Aliera directly and Moses indirectly, considering Moses's history of fraud and perjury and Aliera and Moses's joint histories of commingling and wrongfully converting Unity's funds;

- The legal impossibility—or at a minimum the risks—of trying to pass off Trinity as an HCSM given that Trinity had no plausible factual basis for claiming to satisfy either:

    - the "pre-1999" formation and continuous operation requirement for HCSMs under 26 U.S.C. § 5000A(d)(2)(B); or

    - the IRS's operational test for 501(c)(3) tax-exempt status, given Aliera's substantial influence and control over Trinity;

- The likelihood that state Departments of Insurance, Attorneys General and courts would conclude that Trinity was illegally selling unauthorized insurance products; and

- Trinity's need for independent board members unbeholden to Aliera.

[Doc. 14, p. 17]. As to the tax-exemption, the Sharity Trustee asserted that

Defendants were negligent because they sought a tax exemption for Trinity under

false pretenses and created Trinity as a purported HCSM even though Trinity could not qualify as a HCSM as it had not been in existence since at least 1999. Id. at 18.

These facts are more than sufficient to show that Defendants breached the duty of care by failing to exercise the required skill, prudence and diligence in the performance of incorporating Trinity and obtaining the tax-exemption. As such, to the extent that Defendants argue that this claim is subject to dismissal because they completed the tasks, the motion is **DENIED**.

### b. Proximate Causation

Defendants also argue that the legal malpractice claim must be dismissed because of the failure to allege proximate causation. Essentially, Defendants assert that proximate cause is lacking because multiple intervening events occurred between Trinity's formation and its bankruptcy almost three years later.

Defendants are correct that proximate cause does not exist where there are intervening events. In fact, Georgia law provides the following:

> there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury.

Finny v. Machiz, 463 S.E.2d 60, 60 (Ga. Ct. App. 1995) (citation modified). By focusing only on the bankruptcy, Defendants invite this Court to ignore the other

11

injuries Trinity began suffering almost immediately after its formation. Indeed, Plaintiffs alleged in their First Amended Complaint that weeks after Trinity began conducting business and selling HCSMs, regulatory actions and class action lawsuits were filed against it, resulting in the expenditure of millions of dollars in legal fees and the payment of various fines. Because the Court will not analyze proximate cause solely in relation to Trinity's bankruptcy, Defendants' request for dismissal on this basis is **DENIED**.

## II. The Sharity Trustee's Claim for Breach of Fiduciary Duty (Count II)

In the Sharity Trustee's breach of fiduciary duty claim, the Sharity Trustee asserts that Defendants owed Trinity a fiduciary duty to create Trinity as a legitimate entity and for legitimate purposes and not as an entity to be used as part of a scheme by the Insiders. To successfully state a claim for breach of fiduciary duty, the plaintiff must show: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." Griffin v. Fowler, 579 S.E.2d 848, 850 (Ga. Ct. App. 2003).

Defendants argue that the breach of fiduciary duty claim must be dismissed because "the Sharity Trustee may not bring a claim for breach of fiduciary duty where the alleged duty does not exist." [Doc. 17-1, p. 21]. Defendants also argue that "the Sharity Trustee may not bring a claim for breach of fiduciary duty that

duplicates a legal malpractice claim." Id. at 22.  The Court will first address whether Plaintiffs sufficiently alleged a duty.

      **a.    Duty**

In Georgia, attorneys owe clients "fiduciary duties to show loyalty, to exercise the utmost good faith, to apply [their] best skill, zeal, and diligence in representing [the client], and to avoid interests or actions that [are] incompatible with [the client]." Tunsil v. Jackson, 546 S.E.2d 875, 878 (Ga. Ct. App. 2001). Defendants argue that the entire claim must be dismissed because it "stems *primarily* from [Defendants'] conduct relating to the Management Agreement," which was not within the scope of the representation.  [Doc. 17-1, p. 24] (emphasis added).

The Court is not convinced that the claim is subject to dismissal, especially since Defendants failed to address the entirety of the claim.  While the claim does state that one way in which Defendants breached the fiduciary duty was by drafting a Management Agreement which allowed Aliera and its Insiders to use Trinity in an illegal scheme, the First Amended Complaint also provides that Defendants breached the fiduciary duty simply by creating Trinity for illegitimate purposes. Importantly, no dispute exists that pursuant to the engagement letter, Defendants owed Trinity a fiduciary duty as to the formation of Trinity.  Because Plaintiffs

13

have alleged that Defendants created Trinity for illegitimate purposes under terms strongly favorable to Aliera in order to perpetrate a fraudulent scheme—and Defendants have provided no reason as to why this cannot state a claim—the breach of fiduciary duty claim is not subject to dismissal.  Thus, to the extent that Defendants argue that Plaintiffs failed to show a duty, the motion is **DENIED**.

      **b.**     **No duplicative claim**

Defendants also argue that the breach of fiduciary duty claim must be dismissed because fiduciary duty claims that are duplicative of legal malpractice claims are not allowed.[7] The Court disagrees that Georgia law mandates dismissal. Indeed, the Supreme Court of Georgia has held that a plaintiff is "permitted to pursue alternative theories of relief based on causes of action with different elements, even when those causes of action arise from the same underlying conduct."  Titshaw v. Geer, 907 S.E.2d 835, 845 (Ga. 2024).[8]  This is true even for claims involving breach of fiduciary duty and legal malpractice.  See Both v. Frantz, 629 S.E.2d 427, 431 (Ga. Ct. App. 2006) (rejecting argument that a breach

---

[7] In their reply brief, Defendants seem to concede that alternative pleading is allowed. [Doc. 20, p. 8].

[8] In Titshaw, the court specifically disapproved the line of cases which held that "claims are always duplicative of legal malpractice claims, [and subject to dismissal], if based on the same facts."  907 S.E.2d at 845.

of fiduciary duty claim was subject to dismissal as duplicative). Because Plaintiffs are permitted to pursue alternative theories of relief, dismissal is not appropriate. Accordingly, to the extent that Defendants seek dismissal as to the claim for breach of fiduciary duty because it is duplicative of the claim for legal malpractice, the motion is **DENIED**.

### III. The Aiding and Abetting Breach of Fiduciary Duty Claims (Counts III and IV)

Counts III and IV are both aiding and abetting breach of fiduciary duty claims. In Count III, Plaintiffs allege that Defendants aided and abetted Aliera's violation of the fiduciary duty that Aliera owed to Trinity. Similarly, in Count IV, Plaintiffs assert that Defendants aided and abetted the Insiders' violation of the fiduciary duty that the Insiders owed to Aliera. Defendants argue, among other things, that both counts must be dismissed pursuant to the stranger doctrine.

Georgia law allows recovery for aiding and abetting a breach of fiduciary duty. To state such a claim, a plaintiff must allege the following:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

15

Insight Tech., Inc. v. FreightCheck, LLC, 633 S.E.2d 373, 379 (Ga. Ct. App. 2006). Particularly relevant here, the Georgia Court of Appeals has held that "to establish under the first element that the defendant acted without privilege, the plaintiff must show that the defendant was an intermeddler or stranger to the contract or business relationship at issue." United Scis., LLC v. Kellett, 890 S.E.2d 103, 108 (Ga. Ct. App. 2023) (citation modified); see also Am. Mgmt. Servs. E., LLC v. Fort Benning Family Cmtys., LLC, 774 S.E.2d 233, 250–53 (Ga. Ct. App. 2015) (dismissing an aiding and abetting a breach of fiduciary claim because the defendant was not a stranger to either the contract at issue or to the business relationship giving rise to and underpinning the contract); U.S. Cap. Funding VI, Ltd. v. Patterson Bankshares, Inc., 137 F. Supp. 3d 1340, 1378 (S.D. Ga. 2015) (recognizing that the stranger doctrine applies to claims for aiding and abetting a breach of fiduciary duty). Notably,

> if the defendant has a legitimate economic interest in either the contract or a party to the contract, . . . or where a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though he is not a signatory to the contract.

United Scis., LLC, 890 S.E.2d at 108 (citation modified).

16

Plaintiffs acknowledge that Defendants were not strangers to the business relationships at issue. Indeed, it is clear to the Court that Defendants were not strangers, and thus did not act without privilege. To avoid dismissal, however, Plaintiffs ask the Court to ignore United Sciences, LLC v. Kellett, and other cases like it decided by the Georgia Court of Appeals, because the Georgia Supreme Court has not yet decided the issue and could decide the issue differently.

The Eleventh Circuit Court of Appeals has held that where the highest court has not spoken on an issue, courts should ordinarily follow the decisions of the intermediate courts. Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018). Courts may disregard the decisions of the intermediate courts only if "persuasive evidence demonstrates that the highest court would conclude otherwise." Id. In the Court's view, persuasive evidence does not demonstrate that the Georgia Supreme Court would decide the issue differently because the stranger doctrine has been the law in the Georgia Court of Appeals for almost two decades, and the Georgia Supreme Court recently denied certiorari on a case applying the stranger doctrine. See United Scis., LLC v. Kellett, 890 S.E.2d 103 (Ga. Ct. App. 2023), *cert. denied* (Ga. Feb. 6, 2024). The Court will therefore apply the rule from the Georgia Court of Appeals. Because Defendants were not strangers to the business relationships at issue, Counts III and IV are **DISMISSED**. See U.S. Cap. Funding,

137 F. Supp. 3d at 1378 (granting motion to dismiss where the plaintiff failed to allege that the defendant's actions were without privilege because the defendant was not a stranger to the business relationship).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [Doc. 17] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Counts III and IV and denied as to the remaining counts. The parties are reminded that this case is assigned to a six-month discovery period, which commences thirty days after the first answer is filed.

**SO ORDERED** this 15th day of August, 2025.

J. P. BOULEE
United States District Judge